Good morning, Your Honor. I'm Jerry Cunningham, Ms. Bleeker's attorney. Ms. Bleeker comes today seeking the court to reverse a summary judgment ruling involving a discrimination case where the court found that there was no adverse action proven and no evidence to support pretext. The case really involves two separate term appointments. Ms. Bleeker was a term appointment employee of the Forest Service, and as such, she had certain limitations in the length of her employment. Now, I'd like to just cover briefly the law on the term appointments because it's significant in that it applies to both Term 1 and Term 2 in this case, and it's 5 CFR 316.301. It sets forth the parameters for the term appointments. It gives the agency certain authority, and it sets forth certain limitations upon agencies. The first thing the agencies can do is they are allowed to appoint people for a term appointment for a period of no less than one year and no more than four years with incrementally yearly extensions. Beyond that, they must seek the approval of OPM, Office of Personnel Management, to get any additional extensions. They are not authorized any other changes to these rules. The only person authorized to change it would be OPM. On the other hand, OPM can extend the four-year limit as it sees fit, and in this case, that is one of the primary issues here. Ms. Bleeker was on a four-year appointment for one year with four extensions. The United States project that she was working on is approved by Congress, and this particular project involved over five regions of the Forest Service, so we're not talking about Ms. Bleeker as an individual in this particular case. There are many, many, many people involved in this particular term project. In 2002, the USDA determined that this project was going to need to be extended, and they submitted a proposal and a request to the Washington Office of Personnel Management. Now, in the background of this request is they put together a list of all the employees in the five regions that they felt were eligible to be extended beyond four years. This included many people. Ms. Bleeker was one of the eligible people to be extended beyond four years. The request went to Washington sometime in early 2002, and in the summer or right around the summer, Washington came back and approved extensions for those that were eligible, and it approved specifically 21 people for an extension. Now, this is where the first problem arises. In this letter from Washington, it outlined the people that Washington approved and those it didn't for various other reasons. However, this letter has never been able to – we've never been able to obtain it. It was a subject of a production request, and it came back saying no such document could be found, nothing responsive.  However, what occurred next was instead of anybody seeing the Washington letter, Human Resources in Washington sent the approval out to the five regions stating and summarized what Washington said. And in that summary, they stated 21 people approved. However, a chart attached to it – and we've never been able to determine who prepared that chart because it wasn't the Washington info – it only shows 20 people. And out of everybody in the United States or the five regions, for some reason, Ms. Bleeker is not listed as approved for an extension. This generated serious problems because Ms. Bleeker was given a copy of this letter by mistake. As soon as she saw the letter, she went to her immediate supervisor and she claimed, Human Resources is retaliating against me again. I'm eligible for the extension. There's no reason for this. The supervisor goes to Human Resources, and she eventually gets an email from the Human Resources supervisor, it was a mistake, you're okay. That was term one, and as of now, she thinks she's extended beyond 2004. Then they had a bid out, an announcement for another job, a promotion. She competes for that job. She is selected, and that job was a GS-6 in the same office, and it also was a term appointment. So we refer to that as term two. Term two, in the request for personnel action, the managers stated conversion to a term not to exceed 13 months. And if you go back to this 316.301A, the minimum allowed by law is a period of a year. Well, obviously, they don't want to bring in people for short periods of time on these term appointments and have to train them. So Ms. Bleeker understands now she is in a new term position, and term one is not quite as serious or important anymore. However, she bids on the job. She gets selected. And after she is selected, she is called in, and her manager says, you've got to agree to these terms before they'll let you have the job. Now, this is after selection, and it was a little sheet. It's an exhibit. It was a sheet just giving certain specifications that we're going to keep you under the old term rules, and you're not going to be allowed to participate as a new term. We're not going to honor or permit you to stay starting a new year. So she is now appointed to this GS-6 position, and under those conditions. She executed a, in the case laid down below, a declaration stating, and there was no dispute by the supervisor, that when she was told about these parameters under this new appointment, her signature merely meant that she was acknowledging it and that she was not agreeing to the terms, but it was that if she wanted the job, she had to go forward. So she went forward. Now, the court below, basically with respect to Term 1, has held that this was more of a breach of a contract case, that Term 1, when it expired in January 4, her employment just went away. It was a natural progression of the term ending, and therefore, since it was a natural ending of the term, Ms. Bleeker could not say this was an adverse action. So that is where we lose the claim of an adverse action. And ---- Let's assume it's an adverse action. Yes, sir. How do you connect it to her protected activity? That's where I understand the game is being played here. The connected activity starts back with the ---- And the reason why they do it is because it was due to her protected activity and not because of other reasons. They say they had other reasons to explain this. Yes, sir. The reason they gave, the official reason given by the Forest Service was that, I quote, Ms. Bleeker reached the end of her tenure as a term employee, and HR, human resources, advised that she could not be extended. Period. So what they're saying is it had nothing to do with the term just expiring. They're saying she couldn't be extended with the rest of the employees. If they'd have left that off, I don't think we would have been able to pursue a cause of connection. They may have been right or wrong about that, but how do you show that the reason they wrote that is because they're retaliating against her? The reason was the person that is involved with this in human resources had a complaint filed against her by Ms. Bleeker. As a result of that complaint, this HR person was restricted from having anything to do with any personnel actions involving Ms. Bleeker. As a result, we contend that this is the start of it. The discipline that this person received was that she could not do anything with Ms. Bleeker's acts or personnel actions for a period of three years. Now, this person had this... What was that person's name again? Ms. Dyer. Did she have anything to do with what you just read? We found, yes, sir, one part that Ms. Bleeker, when she came in to complain about the HR discriminating against me again, because that suspension thing was still going on in the beginning of this, she complained that they were continuing the retaliation, and she said, I'd like to find out what's going on. And they said, well, call Washington. When she called Washington about the term, her name not being listed, they said, well, you need to talk to Ms. Dyer. She prepared the list of who was not extended. So we think that that's a reasonable inference there. Did Ms. Dyer answer questions as to what she did and why she did it? She said that she didn't know why she was listed as being not eligible for an extension. In other words, human resources did accomplish that. They told the managers that she was not. It's opposition that when you have 21 people and only one person who is out of the 21 eligibles, only one who is not extended, there's a very reasonable inference there. And when they won't produce the documents related to it, when the second-term document was submitted, it was altered. And every one of these events, one on top of the other, clearly show that someone was taking action against her, and there is no other explanation to why they would not honor that extension. Did you want to reserve any time, Mr. Cunningham? I'll reserve the remaining. Okay. Thank you, sir. Thank you. Morning. Morning, Your Honors. If I could just have one minute here. Your Honor, may it please the Court. My name is Paul Stearns. I'm an assistant U.S. attorney, and I'm here on behalf of the defendant, Thomas Vilsack, the United States Department of Agriculture Secretary. The district court's order granting summary judgment as to counts one and three of the complaint should be affirmed. The district court was correct in its ruling in that the undisputed material facts showed that, notwithstanding the plaintiff's prior protected activity, which occurred in 1995, 96, and in 2000, with the final such complaint being resolved in 2001, that plaintiff was nevertheless hired for a term appointment. She was actually hired in 1999. She started that term appointment in January of 2000. She was subsequently extended three times to the maximum amount permitted by the federal regulations to a total of four years, January 2004, and that she was in fact promoted in November of 2003 from GS-5 to GS-6, which gave her a pay increase. Notwithstanding all that prior protected activity, she was nevertheless hired, extended, and promoted to the full length of a term appointment, which is four years. She was never fired. She was never improperly removed. Her term simply expired pursuant to the Code of Federal Regulations. Were other people extended but not her? That is true. Other people were. How do you account for that? Your Honor, there is a document within the record, and it's ER-182, and it was a response from Washington, D.C. to the regional foresters summarizing OPM's response, and there were a number of people who were not extended for various reasons. Plaintiff was one of those people, and it's important to remember that this occurred in 2002, and it occurred by OPM. That was a response from Washington, D.C. to the regional foresters summarizing OPM, which is a completely separate agency that's not been sued, summarizing OPM's response. Plaintiff was, in fact, essentially told by that letter, and it was forwarded to her, that she was not extended, that her approval was not extent – I'm sorry, approval for extension was not given by OPM. But nevertheless, afterwards, she was, in fact, extended, and there was a document that the plaintiff relies on, and I kind of refer to it as the Schlosser email, and if you read her opening brief and her reply brief, she converts the Schlosser email into an extension, and that email is very important for a number of reasons. The Schlosser email is found at ER-185, and this is what plaintiff bases her extension on, and that email specifically says, Lynn's current appointment has been extended to March 15, 2003. And again, this occurred after OPM denied the extension, so it was, in fact, corrected. But the email that she relies on, and which she bases her subjective beliefs on, actually says her extension was to March of 2003. And then that email is also buttressed by the fact in the record that the SF50, which is the Notice of Personnel Action, and there's a number of them in this case, that there's an actual personnel document, and that's found at ER-171, that affects that extension. So she was not only extended to 2003, but afterwards she was extended one more time to 2004, which is the maximum amount that she's permitted to have under the Code of Federal Regulations. Were other people extended beyond that who've also maxed out? There were a number of people that were not extended, and there were some that were extended. But it's important to read the – and this comes all the way from Washington, D.C., and I think that one has to keep that in context, that there's absolutely no evidence that this grand conspiracy involving – this alleged grand conspiracy involving Vicki Dyer went all the way up to Washington, D.C. But in that letter, and again, that's at ER-182, it says, as a reminder, employees with not-to-exceed dates that have expired should have been separated on their NTE date. So that's the director of HR in Washington, D.C., who had nothing to do with Plaintiff ever. There's no evidence that this person was ever involved with Plaintiff or knew about her prior protected activity. He's telling the regional foresters, which are the district rangers' bosses, that you've got to terminate these people after they've reached their four-year maximum. So, yes, there were other people that were extended up to the maximum, but there's no evidence that Plaintiff was not extended for any improper reason. And that's the real thrust of this case. There's no evidence she was not extended for any improper reason. And let me back up and talk about one thing that she started at the beginning, which is to say that she had two-term appointments. This is incorrect. She had one-term appointment, which she specifically testified in her deposition and which the district court relied on. That term went with the employee. That is, when she was promoted in 2003, that was within the same term appointment that she had. And that is evidenced by the fact of the Secretary's witness, Gloria Crawley, at ER 78-79, who testified about the differences in the type of term appointments. This was an internal announcement. Therefore, because it was an internal announcement, the term went with the employee. Plaintiff talks about another document that he refers to as the case. I just want to pin this down. Who made the decision ultimately not to extend her? Well, her term simply expired. So she to get her beyond the 4-year limit requires two things. It requires approval from OPM, and there's no evidence in the record that that, that there was actual approval from OPM. But that's really beside the point. And then it requires the agency to concur or to recommend that. And there is no evidence that they ever did so, that they ever did that. And she requested an extension? Well, the agency has to request an extension to OPM. And they ultimately did not request an extension to OPM. Did she ask the agency to request an extension? I don't know if she did or did not, Your Honor. The agency decided not to request a special extension beyond the 4-year timeline. But they did it for other people? They did it back in 2002, and they did it for Plaintiff back in 2002 as well. And so, I mean, when you look at the timing here, to believe Plaintiff's argument, you would have to believe that notwithstanding her prior protected activity, that they hired her in 2000, they extended her three times, and they promoted her, all so they could deny her a special exception. And that just doesn't hold any water here. What happened was when OPM said these people are not permitted to have an extension, and it wasn't just Plaintiff. I think there was about 14 others that were also denied. Okay? And it's important to also remember that at the time, the acting director of HR said, four years is enough. That's all you can get. We're going to separate our people at their NTE date. And that, again, was ER 182. But afterwards, notwithstanding that, they went ahead and corrected that. That is, when I say that they corrected it, they went ahead and made sure that she could be extended. And in fact, she was extended two more times after essentially OPM said she could not be extended. So the fact that they extended her, if they wanted to discriminate against her, that was the time to do it. They wanted to retaliate, rather. This isn't a discrimination case, it's a retaliation case. But that was the time to do it. And the district court properly recognized this. There was plenty of earlier opportunities had they wanted to retaliate her against her, and therefore, Plaintiff has never been able to show the causal link between the alleged adverse employment action, which there was none here, and the prior protected activity, which, again, was years ago. You don't think the refusal to extend can be an adverse employment action? Well, in this case, no, because she completed her full four-year term, which is authorized by the Court of Federal Regulations. To get her beyond that four years requires two things. It requires the agency to request it specially, and it requires OPM's approval, which is a separate agency. And yet the agency didn't request it. In 2004, the agency did not request it. That's true, Your Honor. So are you saying it can't, cannot amount to an adverse employment action because her term expired? I would say in this case it does not amount to an adverse employment action because her term naturally expired, and that's what the district court recognized. This is essentially a contract action. If you look back in the documents in the record, when she was first hired in 1999, she signed a document that indicated that her term would be a maximum, could be extended up to a maximum of four years. She also signed what you're saying. Well, I go back to, you know, there are cases that say, you know, a refusal to hire is an adverse employment action, right? Lots of cases like that. Yes, Your Honor. So if that can be an adverse employment action, you know, and hiring says you can refuse to hire for all kinds of discretionary reasons but not for reasons prohibited by law, so doesn't that same rule apply to, say, these discretionary extensions? No, Your Honor. Plaintiff even admits it in his brief. It's the first page of the reply brief. It was also admitted on the second page of the response in the district court that even if OPM had extended plaintiff, and again, there's no evidence that that happened, but even if they did, the agency had a right not to extend her. And that's admitted on the first page of the brief, of the reply brief, first and second page of the reply brief. Let me ask you a hypothetical following up on Judge Nishima's question. Suppose, totally hypothetical, but suppose someone uncovered a letter written by people in the agency that says we're not going to request an extension for this protected activity. Would that give rise to a cause of action? It might. And I would say it might because you still have to have OPM approve it. Even if the agency wants it, without OPM, to go beyond the 4 years, there's no right to have an extension. So you have to have both. You have to have OPM and the agency. So if you had the OPM saying, yes, she could be extended, I think that that would be an adverse action. But that's not the case here, Your Honor. That would be the matter of damages, though, wouldn't it? I mean, if we take his extension to the point that she was entitled to the lottery ticket of a request to OPM, and then you could argue what's the probability they would or wouldn't have. Well, whether or not she would have been extended, I guess I'm not following, Your Honor. But the real issue here is that there was no extension by OPM, and there was also no extension by the Forest Service. And that essentially kills her case. When she took the promotion, and again, this is near the end of her term, a term that she knew was going to expire. When she took that promotion, she actually signed a document, and he refers to it as the job factors. He thinks this he believes, the Plaintiff's counsel believes that this document is somehow nefarious. But in fact, this document, which was signed by the plaintiff on October 18, 2003, is found at ER191, it tells her before she takes that promotion that her term, that this promotion is within the same term. This document is also consistent with the regulations, which is 5 CFR 335.102F1. And it cannot, and kind of going back to your question earlier, Your Honor, if you apply universally applied principles, and that's the reason the person's job expires, that is not a material adverse effect. That is not an adverse job action. And that's what the district court here says. So I was asking if some people were extended and some people weren't. If she's being treated differently from other people who are extended, then you have to sort of wonder why. Right, Your Honor. Well, in 2002, and I think it's important to look at the time frame again, in 2002, there was a request to OPM to extend about 48 people, including Plaintiff. Some were granted it, some weren't. Plaintiff was in the camp that was not granted the extension. But they corrected that. And when I say they, the Forest Service, notwithstanding that, they corrected that issue. And she was, in fact, extended two more times after OPM, a completely separate agency. And there's no evidence in the record that OPM was discriminating against her and the claim is brought against the Forest Service, not OPM. And the district court recognized that. But notwithstanding that, in 2002, that was rectified and she was extended two more times and promoted, which does not offer any support that there's a causal link between the adverse action and whatever. You would have to believe that, again, that there's some kind of grand conspiracy to hire, promote her, extend her three times just so they could not give her one more time, one more extension, which is a special extension. And I think that's all important because when she took the test, and this was a certification test, an internal test, when she took the test from GS-5 to GS-6 and was, in fact, promoted in 2003, she understood that the term went with her. And she testified that in her deposition. And I think that's a very important fact, that when we look at her affidavit, she testified in her deposition. And the AUSA asked the questions, before I leave that, with your claim relative to the term position, do you have any evidence or any witnesses to suggest that your term was not extended for any improper reasons? Quote, not at this time. That's found at ER-163. In her deposition, she said she had no evidence that she was not extended for any improper reason. Only after the Secretary filed its motion for summary judgment did she put up this affidavit. In that affidavit, she relies on the Schlosser e-mail. It's at ER-30, paragraph 6, to concoct this extension to March of 2005. And in fact, the document, the Schlosser e-mail clearly shows that she was only extended to March of 2003, which is buttressed by the SF-50s. Additionally, Your Honor, her affidavit, it should be barred under the sham affidavit doctrine. It also includes rank hearsay throughout it. It has references to a conversation with her boss. He did not put up an affidavit, to 36 other witnesses, and to somebody else about Vicki Dyer. That's all rank hearsay. The district court recognized that and said this is a summary judgment motion. You've got to come forward with affidavits. You didn't do so. And I would lastly say, with respect to Vicki Dyer, there is absolutely no evidence that she participated in the extensions or in the promotion. That's found in the record, Your Honor. She testifies at ER-111, 116, 118, and 123. Plaintiff has no evidence that Vicki Dyer was in any way involved in these activities. Thank you, Your Honor. Thank you, Mr. Stern. Mr. Cunningham, back to you. I believe you have three minutes left or so. First, Your Honor, I'd like to point out one thing that's very disturbing. There is a document in the file, and it's 175, where the Forest Service requested an extension for Ms. Bleeker. Now, these extensions in 2002 were not extensions for then. If you look at the letter, the Forest Service was extending those people that were coming up with four-year service in 2004. In other words, Ms. Bleeker was in a group of people that was still eligible for three more extensions, two or three. The request in 2002 relates to beyond that. So when you come in and say, well, we extended her one, two, and three more times, it has nothing to do with this because those are automatic extensions authorized by the Forest Service. They've always requested extensions for Ms. Bleeker, and the request for these extensions that we're talking about today were submitted in 2002 for years to start after 2004. The next thing is when it's said that there is nothing in there to show that Ms. Bleeker was approved for that extension beyond 2004. There's an OPM confirmation email in the file at ER190. It comes back and it quotes the letter that the Forest Service has lost. It quotes the letter from Washington, D.C., and it specifically says, in that letter, Ms. Bleeker was authorized an extension beyond 2004. That's in the file. To just come out and say there's nothing in there about the extensions is incorrect. To say that, oh, well, some people applied, we are talking about all the people that were subject to extensions from beyond 2004. Management requested it. When it came up with Ms. Bleeker having a problem, right up until November, management, management, they go to HR and say, for one thing, her supervisor said, you made her agree to these terms in this. And he goes to the HR supervisor and said, there's something wrong. We need help. We don't want to go through the bidding process again. She should have the extension. Why isn't she getting it? Can't you tell us? Their answer to management, their answer to management was, she couldn't be, we can't extend her because she is not eligible. That's in spite of the Washington letter, in spite of the OPM confirmation. She was actually selected for an extension. There's no reason why she shouldn't have. And so, in a way, you can't pick, necessarily pin it down to somebody, but this is a lady that had put in a request and a complaint, several complaints, one right in the middle of all of these events in 2003 against HR. Thank you. Mr. Cunningham. Mr. Sturz, thank you. The case just argued and submitted. We'll stand and recess for the day. All rise.
judges: Garbis, Tashima, Silverman